UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JAMES FLEISHMAN,<br><br>                    Defendant. | Case No. 11 Cr. 32 (JSR) |

**DEFENDANT JAMES FLEISHMAN'S
MEMORANDUM IN SUPPORT OF THE BUREAU OF PRISONS'S
AND UNITED STATES PROBATION'S REQUEST FOR
MODIFICATION OF TERMS OF SUPERVISED RELEASE**

COLEMAN & BALOGH LLP
ETHAN A. BALOGH (*pro hac vice*)
JAY A. NELSON (*pro hac vice*)
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com
jay@colemanbalogh.com

Attorneys for Defendant
JAMES FLEISHMAN

## I.  INTRODUCTION

As directed by the Court, defendant James Fleishman, by and through his counsel, respectfully submits this Memorandum regarding the appropriate judicial response to the Bureau of Prisons's and United States Probation Office's (the "USPO") request for the modification of the terms of Mr. Fleishman's supervised release, and in response to the Government's Summation Memorandum filed October 4, 2012 ("GSM").

In response to a request from the Bureau of Prisons (the "Bureau" or "BOP"), an agency within the United States Department of Justice, that this Court modify the terms of Mr. Fleishman's supervised release based on the Bureau's placement of Mr. Fleishman in its Residential Drug/Alcohol Treatment Program ("RDAP"), the Government ignores its own division's assessment of Mr. Fleishman, and then asks the Court to reject that decision based upon insufficient evidence.  GSM at 1-2.

The Government arrives at this surprising conclusion by making several missteps.  After faithfully reciting the record, to which there is no dispute—that prior to his in-prison application to the RDAP program, Mr. Fleishman "never indicated any problem with alcohol, let alone a need or desire for alcohol treatment" in his pre-judgment interviews with Pretrial Services ("PTS") and the USPO, GSM at 2—the Government then overstates the record by repeatedly declaring that Mr. Fleishman previously "denied any problems with alcohol use[.]" GSM at 4, 6, 8, 9.  The record is not in accord.

The Government also ignores the applicable issue of "denial," *i.e.*, the cognitive dissonance that commonly accompanies drug/alcohol dependence and results in the user's inability to recognize his abuse problem.  This well-documented circumstance fully explains Mr. Fleishman's prior reports of "social drinking."[1]  So too, the circumstance presented by the USPO's motion—an inmate's application to the RDAP program despite the lack of record

---

[1]Importantly, neither PTS nor the USPO sought routine information regarding the frequency of Mr. Fleishman's alcohol consumption and other factors that would have permitted a diagnostic analysis of Mr. Fleishman's use to inform the question of what *he* meant by "social use."  As presented, Mr. Fleishman's self-reporting does not necessarily conflict with the BOP's diagnostic assessment of him, albeit an assessment based on more complete information.

evidence of substance misuse problems before the district court—is so common, the BOP has implemented regulations to identify the manner by which such later-applications should be assessed.  The BOP even maintains a "form waiver" aimed solely at the granting of a motion to modify the terms of supervised release to permit post-incarceration treatment.

In addition, the Government places no value on Dr. Krick's assessment of Mr. Fleishman.  To be plain, Dr. Krick is a seasoned professional of such stature that he administers the entire RDAP program at Admax Florence.  In this position, he certainly has encountered his fair share of inmates who seek entry into the program without sufficient bases, and his determinative evaluation is entitled to great weight.

Finally, the Government's position—that Mr. Fleishman be permitted *more* liberty on supervised release than the Bureau of Prisons suggests is appropriate—presents a decided departure from the Executive's typical approach to supervision to ensure the avoidance of recidivism.

On the record in this case and as highlighted below, Mr. Fleishman respectfully contends that the proper judicial response is to approve the Bureau of Prisons's and USPO's request to modify the terms of Mr. Fleishman's supervised release.

## II.  STATEMENT OF THE CASE

On December 23, 2011, the Court entered judgment against Mr. Fleishman in this criminal case.  Dkt 154.  The judgment did not include "a special condition for the offender to participate in substance abuse treatment or testing based on the Court's determination that the offender pose[d] a low risk of future substance abuse."  Dkt 167.  That prior determination was unsurprising as neither party nor the USPO raised any issues about substance abuse at the time of sentencing.

On May 9, 2012, the USPO petitioned the Court to modify the conditions of Mr. Fleishman's supervised release to require participation in a treatment program.  Dkt 167.  Because Mr. Fleishman had been admitted into the RDAP "program based upon documentation provided by his primary care physician, and [because] the facility's DAP Coordinator

2

diagnos[ed] that [Mr.] Fleishman had an alcohol dependence problem prior to arrest and conviction[,]" the USPO sought this modification to ensure Mr. Fleishman's "continuity of care." *Id*.

On May 18, June 22, and June 27, 2012,[2] the Court held telephonic conferences to (1) address the Court's expressed concern that Mr. Fleishman's admission to the RDAP program was inconsistent with his representation to the USPO at the time of sentencing that he "drank socially[;]"[3] (2) direct the Government to obtain materials documenting Mr. Fleishman's statements about alcohol use or abuse during the pendency of the trial proceedings; (3) permit defense counsel to address with Mr. Fleishman the question of representation as this matter fell outside the scope of counsel's retainer agreement, and (4) schedule an evidentiary hearing, which at the June 22 conference, the Court set for September 14, 2012.[4]

The Court issued one Order based on these three conferences, which it executed on June 29, 2012 and entered into the docket on July 3, 2012.  Dkt. 168.  That Order, which was entered on consent, provided that

> Pre-Trial Services provide to the Court, the Government and defense counsel for Mr. Fleishman copies of any portions of any reports and notes referring to Mr. Fleishman's use or indication of use of alcohol or imposition of preconditions relating to alcohol.

*Id*.

---

[2]Mr. Fleishman recites only the more important telephone conferences as relate to the instant proceedings.

[3]The Court framed the inquiry as "was he lying then or is he lying now."

[4]At the June 22 conference, the Court also scheduled a September 4 telephone conference to address the Court's "options" at the September 14 evidentiary hearing.  At the June 27 conference, defense counsel confirmed his representation of Mr. Fleishman in this matter.

On July 10, 2012, the Court convened another telephonic conference.[5]  The Court addressed the question of Mr. Fleishman's attendance at the evidentiary hearing, which defense counsel asked to be waived.  The Government opposed waiver of presence based on its announced intentions to call Mr. Fleishman as a witness at the evidentiary hearing.  Defense counsel provided two responses: (1) that he had received an email from Dr. Krick, the head of the RDAP program at Admax Florence, and Dr. Krick had requested that the Court excuse Mr. Fleishman's attendance so as not to disrupt his treatment, which could compromise his treatment progress; and (2) that in any event, based on the Court's comments, counsel would direct Mr. Fleishman to interpose his constitutional prerogative against compelled testimony, which would trump the Government's pursuit of that testimony.

The Court directed defense counsel to provide promptly a copy of Dr. Krick's correspondence, which directive he met that same day.  *See* Exhibit A.[6]  The Court also ruled that it would excuse Mr. Fleishman's presence if (1) on or before July 17, 2012, defense counsel confirmed that, in fact, Mr. Fleishman would stand on his privilege, and (2) on or before July 24, 2012, Mr. Fleishman provided an affirmation so invoking his privilege.  Mr. Fleishman then presented timely the requested representations and affirmation.  *See* Exhibits B, C.

On September 14, 2012, the Court held a hearing during which it ruled upon objections and took testimony.

---

[5]The Clerk's Record in this matter indicates that these proceedings were held July 12, 2012, not July 10, 2012.  Mr. Fleishman respectfully contends that the Clerk's Record is in error.

[6]Dr. Krick declared at the evidentiary hearing that the impetus for presenting his letter came in response to a party's request to subpoena Mr. Fleishman; the only party to so inform Dr. Krick was the Government.  *See* RT at 8:16-22, 10:24-11:6.

# III.  DISCUSSION

**A.    The Bureau of Prison's definitive assessment of Mr. Fleishman is entitled to deference and the record at bar provides insufficient bases to overrule it.**

The Court should accept the Bureau of Prisons's assessment of Mr. Fleishman.  Dr. Krick is a seasoned professional responsible for administering the RDAP program at Admax Florence. In this capacity, he is responsible for screening candidates to meet the regulatory scheme enacted to evaluate, and where appropriate, treat inmates for substance dependence or abuse so as to educate and rehabilitate them, and further society's goal of reducing the chance of recidivism. More directly, as the Drug Abuse Program Coordinator ("DAPC"), Dr. Krick is responsible for conducting inmate evaluations to "form a clinical judgment to determine if [the] inmate has a substance use diagnosis" defined by the Diagnostic and Statistical Manual of Mental Disorders ("DSM").  BOP Statement No. 5331.02 at 13 ("RDAP Statement"); *see also* Dkt 167.  As part of this diagnosis, the BOP requires that the inmate present substantiating documentation of the dependence/abuse issue.  *Id*; *see also* 28 C.F.R. § 550.53.

Thus, Mr. Fleishman respectfully contends that Dr. Krick's evaluation is definitive and should be afforded great deference.  *See S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 163-65 (2d Cir. 2012).  On this point, the Second Circuit has made clear that "[t]he BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or at a particular facility."  *Levine v. Apker*, 445 F.3d 71, 84 (2d Cir. 2006); *accord Thye v. United States*, 109 F.3d 127, 130 (2d Cir. 1997).  "A sentencing court has no authority to order that a convicted person be confined within a particular facility, much less placed in a particular treatment program; [rather,] those decisions are within the sole discretion of the Bureau of Prisons."  *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995).  Mr. Fleishman

5

respectfully contends that this broad agency authority extends in both directions, *i.e.*, to the BOP's decisions to exclude an inmate from any particular program as well as its decisions to admit an inmate to any particular program.

Similarly, as a factual matter, Mr. Fleishman contends that Dr. Krick is well qualified to assess the credibility of inmates, especially with respect to gaining entry into the RDAP program. Counsel respectfully suggests that any number of inmates in an institution, including Admax Florence, may at times attempt to gain admission to the RDAP without sufficient cause.  Counsel further respectfully suggests that this experience informs Dr. Krick's assessment in every case and that his evaluation of Mr. Fleishman—made with full awareness of Mr. Fleishman's statements as presented in the Presentence Report ("PSR")—confirms that prior to admitting Mr. Fleishman into the program, he performed the very task the Court undertook in the evidentiary hearing of this matter, *viz.*, to resolve any factual disputes and to admit Mr. Fleishman into the program *only* upon a firm confirmation that such a placement was warranted after reviewing all of the facts.[7]  Indeed, the mere fact that the BOP maintains such policies to assess, and where appropriate, to admit into the RDAP program inmates whose treatment issues are not documented in a PSR, speaks to the commonplace nature of Mr. Fleishman's circumstances.  To this end, the BOP maintains a standard waiver form to permit inmates to support the USPO's request for a modification of supervised release when the treatment diagnosis followed an entry of judgment which did not include participation in a substance abuse program.  *See* Exhibit D.

---

[7]Counsel asserted Mr. Fleishman's medical privilege in these proceedings and the Court thus lacks the full medical record upon which Dr. Krick made his determination.

In sum, Dr. Krick's evaluation of an inmate whose record of alcohol misuse was not presented to the district court is commonplace, and one which he is in the superior position to assess.

**B.     The most common symptom of alcoholism—Denial—readily explains the current proceedings.**

Mr. Fleishman notes his current circumstance presents one of the most common symptoms of substance abuse/dependence: denial.  And by denial, Mr. Fleishman does not mean false statements about one's use.  Rather, as detailed in an Everest of literature, Mr. Fleishman contends that this sense of denial means a cognitive dissonance in which the subject himself fundamentally believes he does *not* have a problem and cannot recognize his problem, both of which (unfortunately) exacerbate his problem, and make the prospects of treatment and recovery all the bleaker.[8]  Indeed, a cursory Google search reveals:

- Simple postings about denial, such as:

    About.com ("Unfortunately the phenomenon of denial usually goes hand-in-hand with alcoholism");

    Psychology Today ("Denial—it is powerful, dangerous, and one of the psychological symptoms of being alcoholic.  For those who have not experienced true denial, they may think that it is simply 'denying' that a problem exists. However, denial runs much deeper than that in the psyche of an alcoholic. It is the true belief that he or she is not alcoholic when all evidence points to otherwise"); and

---

[8] As the Government recognizes, prior to the assessment by the BOP, Mr. Fleishman *never* provided any information to any court officer about having an alcohol problem.  RT 104:12-21.

- Peer-rated journals that have address this issue:[9]

    *Denial of alcoholism as an obstacle to recovery*, Moore, Robert A.; Murphy, Thomas C.; Quarterly Journal of Studies on Alcohol, Vol 22(4), 1961, 597-609 (100 male veterans treated psycho therapeutically in an open-ward unit were rated on the degree of denial at admission and discharge, and on the results of treatment. A reduction in the use of denial was closely related to effective treatment);

    *Alcoholism: Blocks to diagnosis and treatment*, William D. Clark M.D., The American Journal of Medicine, Volume 71, Issue 2, August 1981, Pages 275–286 ("The typical patient's reluctance stems from inherent features of alcoholism; denial, organic and cognitive problems, and painful feelings of anxiety and terror, guilt and shame, a sense of spiritual emptiness, and fears that he is 'crazy.'"); and

    *Transcending Alcoholic Denial*, Journal of Nursing Scholarship, Donna Marie Wing RN, 2 October 2007 ("Denial is a characteristic of alcoholism and other drug addictions that must be appreciated in order to understand the recovery process").

Indeed, the characteristic of denial is so ingrained in the nature of substance dependence/abuse, medical science has developed an assessment tool to address it, *i.e.*, the Alcoholism Denial Assessment Tool ("ADAT"). *See e.g.*, *The Alcoholism Denial Assessment Tool (ADAT): A study of interrater reliability*, Wing DM, Hansen H, Martin B., Clinical Nursing Research (August 1994). So too, the use of "interventions" to address substance abuse issues with a loved one arises from this phenomenon of denial: people who need help are often the least likely to recognize that need.

---

[9]Law reviews and books have tackled this issue as well. *See e.g.*, 31 Creighton L. Rev. 265 (1997-1998), *Alcoholism, Drug Abuse and Lawyers: Are We Ready to Address the Denial*; Allan, Rick B. (addressing the problem of denial amongst attorneys who abuse alcohol); *Alcoholism: A Merry-Go-Round Named Denial*, J. L. Kellerman (1975); *The Alcoholic Denial System and Its Effects on Self-reporting,* Marna G. Jacobs, University of Toledo (1987).

In sum, any failure by Mr. Fleishman to recognize and address his alcohol issues prior to his placement in the Bureau of Prisons is readily understandable and part of the nature of this disease.  Mr. Fleishman is thus surprised by the Government's failure to apprehend such basic facts, and is even more stunned by its decision to tell this Court to disregard the studied decision of its own agency under a claim that the Bureau of Prisons's assessment carries no weight.  Mr. Fleishman respectfully contends that the relevant case law and regulations, as presented above, are decidedly contrary to the Government's assertions in its Summation.

**C.    A fair and balanced reading of the record evidence does not support the conclusion that Mr. Fleishman provided false information to any person.**

The Government stretches the record in its pursuit of a denial of the USPO's motion.  In brief, the Government repeatedly asserts that Mr. Fleishman said more than "he drinks socially" when asked about alcohol use during the trial proceedings, and claims he actually "denied" using alcohol to excess.  *See e.g.*, GSM at 4, 6, 8, 9.[10]  Mr. Fleishman disputes that reading of the record.  The record in this case demonstrates that Mr. Fleishman's admission to the RDAP program pursuant to the Bureau of Prisons's assessment was and is correct, and that the failure to flag Mr. Fleishman's issues with alcohol before that time is consistent with denial and/or a failure to volunteer information, but is not the result of any intentional deception.

---

[10]As the Court will recollect, when it inadvertently stated that Mr. Fleishman "denied" alcohol problems to the probation officer, counsel rose (but remained silent) and the Court quickly recognized that counsel had done so to interpose an objection to equating failure to volunteer a fact with a denial of it.  RT 100:9-21.

9

### i.     Katrina Minus-Shepard

The Government claims that in his telephonic interview with United States Probation Officer Katrina Minus-Shepard, Mr. Fleishman "denied any problem with alcohol use[.]" GSM at 4. Mr. Fleishman disputes that claim.

The best record of Mr. Fleishman's statements to probation are Ms. Minus-Shepard's handwritten notes of that conversation. They reflect—but not in quotations—the note that Mr. Fleishman "[d]rinks alcohol socially." Gx 11. So too, the USPO form that Ms. Minus-Shepard was to follow during this interview required questions about, *inter alia*, his "first and last use [of alcohol], [and his] frequency [of using alcohol]." No responses were recorded to these questions, supporting one conclusion: they were not asked. Indeed, Ms. Minus-Shepard made plain that when interviewing a subject, she "take[s] notes as [she] receive[s] the answer" to each question she asks. RT 48:20-22. The lack of any notes indicating any "denial" of issues with alcohol use thus supports that Mr. Fleishman provided no such answer because no such question was asked.[11]

Ms. Minus-Shepard agreed that her notes do not reflect that Mr. Fleishman "denie[d] ever abusing alcohol." RT 60:23-25. When asked most directly about "what Mr. Fleishman told [her] about his alcohol use[,]" Ms. Minus-Shepard testified that he stated he "[d]rinks alcohol socially." RT 50:10-13. Later, Ms. Minus-Shepard confirmed that "*the full content* of [Mr. Fleishman's] statement" to her about alcohol use is that he said "he used alcohol socially." RT 60:1-6 (emphasis added).

---

[11]Ms. Minus-Shepard was unable to answer questions about Mr. Fleishman's first use of alcohol, last use of alcohol, or what Mr. Fleishman meant by "social" use of alcohol with respect to frequency. RT 60:7-23. Similarly, she lacked information regarding whether Mr. Fleishman ever had blackouts or missed work as a result of alcohol use. RT 61:5-10.

This recitation is 100% consistent with the PSR Ms. Minus-Shepard prepared and presented to the Court.  In the PSR, Ms. Minus-Shepard reported that Mr. Fleishman stated that "he drinks alcohol socially."  PSR ¶ 60.  In contrast, at no point in her PSR presentation did she assert that Mr. Fleishman "denied any problem with alcohol use."  *See id*.  Ms. Minus-Shepard agreed that she "did not report that Mr. Fleishman denied ever abusing or overusing alcohol." RT 61:1-4.  While the lack of alcohol misuse may well be the inference from a report of drinking in a social manner, that failure to volunteer does not constitute a denial of misuse by Mr. Fleishman.

**ii.    Emily Rosado**

The Government's treatment of Pretrial Services Officer Emily Rosado's testimony suffers similar flaws.  After conceding that Ms. Rosado "had no independent memory of" Mr. Fleishman or her interview with him, GSM at 4, the Government claims that he "denied any problem with alcohol use" during that interview.  GSM at 6.  Again, not so.

In sum, Ms. Rosado testified as to her general customs and practices, and recited the information she detailed on her worksheet and which was presented to the Court.  Gx 5.  That form indicates that Mr. Fleishman did *not* at any point state he had "[n]o substance abuse/dependence history" regarding alcohol, as that box for such an answer was *not* marked by Ms. Rosado.  *Id.;* RT 94:1-95:10.  The form, like the interview with probation later, indicated social use, but not anything else.  Gx 5.  Indeed, the rest of the boxes that call for information about Mr. Fleishman's alcohol use are similarly empty, showing that *none* of these questions—questions relating to first use, last use and frequency—were asked.  *Id*.; RT 95:10-

18.[12]  Rather, the only information contained on the form showed, like Mr. Fleishman's later

statements, a self-report of use of "alcohol on a social basis."  RT 70:14-17.

Similarly, the bail report she prepared contained *no* statements about Mr. Fleishman's use

of alcohol.  Gx 6; *see also* RT 72:21-23.[13]

  **iii.**  **Joshua Libby**

By stipulation, the parties agreed that Northern District of California pretrial services

officer Joshua Libby would have testified that Mr. Fleishman did not self report alcohol

dependence or misuse issues during his December 2011 interview with Mr. Libby.

*  *  *

In sum, Mr. Fleishman described his drinking as social on two occasions and provided no

other information regarding his use of alcohol during the trial proceedings.  His use of that

ambiguous term, and his failure to volunteer further information regarding his use of alcohol,

does not rise to the level of intentional deception.

**D.**  **Mr. Fleishman's conduct provided a red flag about alcohol use.**

Finally, Mr. Fleishman's response to the initial alcohol restriction presented a red flag,

missed by everyone, including defense counsel.  In sum, the record reflects that after the

Northern District of California, without basis, restricted all alcohol use by Mr. Fleishman, Mr.

Fleishman took steps before this Court and then before the Northern District of California to

---

  [12]Ms. Rosado agreed on direct examination that she never asked those questions.  RT 71:18-19.

  [13]The Government tried to suggest that Howard Chartock "confirmed" that Mr. Fleishman never used alcohol to excess because he "confirmed" the statement that Mr. Fleishman "has no history of using illicit substances."  Compare Gx 6 *with* RT 72:1-74:5, 95:19-96:24.  As should be plain, the comparison between "alcohol use" and "the use of illicit substances" is like apples to oranges.

have this restriction lifted so that he could enjoy alcohol. *See e.g.*, Gx. 4, 9. Even after the condition was deleted, Mr. Fleishman personally followed up with pretrial services on multiple occasions to ensure he had permission to drink alcohol while on release. *See* Gx 8 at 5, 6. In other words, whether or not he recognized his use of alcohol was a problem, Mr. Fleishman evinced an unhealthy desire to consume alcohol. Counsel respectfully contends that this course of conduct is wholly consistent with the Bureau of Prisons's assessment of Mr. Fleishman.

## IV. CONCLUSIONS

Things and people, unfortunately, fall through the cracks even when subject to the best-conceived of processes. This is such a case. Despite the testimony regarding the "customs and practices" of interviewing the accused by pretrial services and the probation office, *no* person conducted his or her interviews as required: to obtain the first and last use, and frequency of use, for *every* substance the subject identifies as ever having used. The forms adopted by PTS and the USPO present these basic diagnostic questions for a reason: a report of social use provides insufficient data to make a proper assessment of misuse or dependence. That is true based on the inherent vagueness and differing opinions of "social" use, and because substance abusers often live in denial, a symptom of dependence that makes identification and treatment all the more difficult. Here, no person ever drilled down on Mr. Fleishman to find out what he meant by social use, and to learn about whether his frequency of use was cause for concern.

The record in this case is fully consistent with a person in denial. As the Government notes, had Mr. Fleishman recognized his abuse issues pre-sentencing, he most assuredly would have brought the issue to the Court's attention as "a mitigating factor" to support a lesser term of

incarceration.  GSM 9; *see also Rompilla v. Beard*, 545 U.S. 374 (2005) (alcohol problems as

mitigating factor); *Parker v. Dugger*, 498 U.S. 308 (1991) (same).

Fortunately, at the time he arrived in prison, Mr. Fleishman obtained information that

provided insight to his alcohol issues.  Like all persons in that position, Mr. Fleishman was

required to undergo a diagnostic examination and identify documentary evidence to corroborate a

qualifying diagnosis.  The Bureau of Prisons's assessment of Mr. Fleishman's issues with alcohol

should thus be accepted by this Court, just as they were accepted by United States Probation, and

Mr. Fleishman's terms of supervised release should be amended to provided the USPO the tools

it needs to assure Mr. Fleishman's continued productive rehabilitation while on supervised

release.

In the end, Mr. Fleishman can understand no good reason to reject the determination by

the Bureau of Prisons.  He contends that the evidentiary record before this Court can only result

in one proper ruling: the grant of probation's request.[14]  Should the Court disagree, the lack of

oversight will only require Mr. Fleishman to proceed alone with his concerted efforts to adhere

religiously to the terms of his supervised release and to take all the steps necessary to assure his

continued recovery and reintegration into society.[15]  Mr. Fleishman respectfully contends that it is

_____

[14]The Government appears to be laboring under the misimpression that a denial of the
USPO's motion would adversely affect Mr. Fleishman's enrollment in the RDAP program.  In
fact, a denial of the USPO's motion will have only one effect: it will eliminate the probation
office's ability to require further treatment of Mr. Fleishman upon supervised release.

[15]With respect the issues left unjoined by the Government at GSM 2, n.1, Mr. Fleishman
adds the following.
First, he respectfully contends that Court action by way of recommendation to the Bureau
of Prisons at this stage of the proceedings is inappropriate.  Instead, he contends that the
appropriate time for judicial comment is at the time of sentencing.  He further contends that the
Court's non-recommendation in this case was the equivalent of a recommendation not to permit

(continued...)

better to provide the United States Probation Office with greater authority to monitor and assist

Mr. Fleishman with his reintegration into society during his term of supervised release.

For all of the foregoing reasons, Mr. Fleishman respectfully requests the Court to issue an

Order granting the USPO's pending motion.

Respectfully submitted,

DATED: October 22, 2012           COLEMAN & BALOGH LLP
          San Francisco, California

ETHAN A. BALOGH
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Defendant
JAMES FLEISHMAN

---

[15](...continued)
entry.  The BOP has now admitted Mr. Fleishman into the RDAP program upon a more detailed
analysis.  Indeed, the Bureau of Prisons and Dr. Krick are well aware of these proceedings and
the Court's concern regarding Mr. Fleishman's placement.  Nevertheless, Dr. Krick has
maintained the placement.  Moreover, Dr. Krick went further, and without any request or
prompting from defense counsel in any way, shape or form, presented a letter in response to the
Government's indication it would subpoena Mr. Fleishman to New York to urge the Court to
leave Mr. Fleishman in treatment so as to avoid "disrupt[ing]" it, which "could compromise his
treatment progress."  *See* Ex. A.  For these reasons, Mr. Fleishman respectfully objects to any
further Court action with respect to Mr. Fleishman's placement in the RDAP program by the
Bureau of Prisons.

With respect to the question of a prosecutorial referral, even assuming *arguendo* that Mr.
Fleishman's failure to volunteer information could legally support an 18 U.S.C. § 1503 omnibus
clause obstruction of justice prosecution—a proposition he respectfully disputes—Mr. Fleishman
contends that this record supports neither the conclusion that he willfully provided any false
statement to pretrial services or the probation office nor that he corruptly endeavored to obstruct
justice with respect to any proceeding in his criminal case.  Indeed, the varied wording of the
purported questions and responses to and from Mr. Fleishman on the alcohol issue reflect that
further investigation and/or prosecution in these circumstances is not warranted.

15

# EXHIBIT A

744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Phone: 415.391.0440
Fax: 415.373.3901
www.colemanbalogh.com



# Fax

| | | | |
|---|---|---|---|
| **To:** | The Honorable Jed S. Rakoff | **From:** | Ethan A. Balogh |
| **Fax:** | (212) 805-7935 | **Pages:** | 3 (including cover) |
| **Phone:** | (212) 805-0401 | **Date:** | 10 July 2012 |
| **Re:** | *United States v. Fleishman*, Case No. 11 Cr. 32 (JSR) | **cc:** | Antonia M. Apps, Esq. Fax: (212) 637-2452 |

( **Urgent**      x **For Review**      ( **Please Comment**      ( **Please Reply**      ( **Please Recycle**

Please see attached.

### COLEMAN & BALOGH LLP

744 Montgomery Street, Fifth Floor  |  San Francisco, California 94111  |  T: 415.391.0440  |  F: 415.373.3901

ETHAN A. BALOGH
eab@colemanbalogh.com

July 10, 2012

**VIA FACSIMILE**

The Honorable Jed S. Rakoff
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312
Facsimile: (212) 805-7935

   RE:  *United States v. James Fleishman*, Case No. 11 Cr. 32 (JSR)

Dear Judge Rakoff:

As directed, we present by this letter a copy of June 29, 2012 correspondence we received from
Robert L. Krick, PhD.  We will meet the Court's further directives in correspondence next week.
Should your Honor require anything further in the meantime, please have Chambers contact us,
and we will respond promptly.  Thank you.

       Respectfully,

       ETHAN A. BALOGH

Encl.

Cc:  Antonia M. Apps, Esq. (w/ enclosure)

**Ethan A. Balogh**

| | |
|---|---|
| **From:** | Robert Krick [rkrick@bop.gov] |
| **Sent:** | Friday, June 29, 2012 10:58 AM |
| **To:** | Ethan A. Balogh |
| **Subject:** | September 14th hearing re: Fleishman, James |

Mr. Balogh,

James Fleishman is participating in an intensive 500 hr, 9 month residential drug treatment program here at ADX-FPC Florence, CO.  He has advised me that he is scheduled to be returned to court for a September 14, 2012 hearing regarding the addition of a condition to his supervised release, specifically that he be required to continue substance abuse treatment while on supervised release.  I am requesting that if it is possible that he be excused from attending this hearing in person.  The primary reason the request was submitted to have an "aftercare" provision added to Mr. Fleishman's conditions of supervised release was to insure continuity of care from prison to halfway house to supervised release. This hearing occurs almost exactly in the middle of his treatment program.  It will certainly be disruptive to his treatment to be absent for several weeks to attend the hearing, and his absence from the prison based portion of the care continuum could compromise his treatment progress.

Please contact me if you have any questions.  Thank you.


Robert L. Krick, PhD
CDR, U.S.Public Health Service
DAP Coordinator
Psychology Services
Federal Bureau of Prisons
ADX-Camp Florence, CO 81226
719-784-9100, Ext 4946

# EXHIBIT B

744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Phone: 415.391.0440
Fax: 415.373.3901
www.colemanbalogh.com



# Fax

| | | | |
|---|---|---|---|
| **To:** | The Honorable Jed S. Rakoff | **From:** | Ethan A. Balogh |
| **Fax:** | (212) 805-7935 | **Pages:** | 2 (including cover) |
| **Phone:** | (212) 805-0401 | **Date:** | 17 July 2012 |
| **Re:** | *United States v. Fleishman*, Case No. 11 Cr. 32 (JSR) | **cc:** | Antonia M. Apps, Esq. Fax: (212) 637-2452 |

**Urgent**      x **For Review**      **Please Comment**      **Please Reply**      **Please Recycle**

Please see attached.



COLEMAN & BALOGH LLP

744 Montgomery Street, Fifth Floor  |  San Francisco, California 94111  |  T: 415.391.0440  |  F: 415.373.3901

ETHAN A. BALOGH
eab@colemanbalogh.com

July 17, 2012

**VIA FACSIMILE**

The Honorable Jed S. Rakoff
United States District Judge
500 Pearl Street
New York, NY 10007-1312
Facsimile: (212) 805-7935

      RE:    *United States v. James Fleishman*, Case No. 11 Cr. 32 (JSR)

Dear Judge Rakoff:

As directed, we present by this letter Mr. Fleishman's position regarding the September 14, 2012 evidentiary hearing.  Mr. Fleishman stands on his Fifth Amendment privilege against compelled testimony and declines to testify.  As further directed, counsel shall provide to this Court presently a signed affidavit attesting to this decision.  We thank the Court for permitting Mr. Fleishman to remain at his designated facility rather than attend the September 14 hearing based on this presentation.

Should your Honor require anything further before the September 4 conference call, please have Chambers contact us and we will respond promptly.  Thank you.

      Respectfully,

      ETHAN A. BALOGH

Cc:    Antonia M. Apps, Esq.

# EXHIBIT C

744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Phone: 415.391.0440
Fax: 415.373.3901
www.colemanbalogh.com



# Fax

| **To:** | The Honorable Jed S. Rakoff | **From:** | Ethan A. Balogh |
|---|---|---|---|
| **Fax:** | (212) 805-7935 | **Pages:** | 4 (including cover) |
| **Phone:** | (212) 805-0401 | **Date:** | 20 July 2012 |
| **Re:** | *United States v. Fleishman*, Case No. 11 Cr. 32 (JSR) | **cc:** | Antonia M. Apps, Esq. Fax: (212) 637-2452 |

**Urgent**      x **For Review**      **Please Comment**      **Please Reply**      **Please Recycle**

Please see attached.

## COLEMAN & BALOGH LLP

744 Montgomery Street, Fifth Floor  |  San Francisco, California 94111  |  T: 415.391.0440  |  F: 415.373.3901

ETHAN A. BALOGH
eab@colemanbalogh.com

July 20, 2012

**VIA FACSIMILE**

The Honorable Jed S. Rakoff
United States District Judge
500 Pearl Street
New York, NY 10007-1312
Facsimile: (212) 805-7935

      RE:    *United States v. James Fleishman*, Case No. 11 Cr. 32 (JSR)

Dear Judge Rakoff:

As directed, we present with this letter James Fleishman's Affidavit with respect to the decision to invoke his Fifth Amendment privilege against compelled testimony with respect to the September 14, 2012 hearing.

Should your Honor require anything further before the September 4 conference call, please have Chambers contact us and we will respond promptly.  Thank you.

      Respectfully,

      ETHAN A. BALOGH

Cc:    Antonia M. Apps, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>JAMES FLEISHMAN,<br><br>     Defendant. | Case No. 11 Cr. 32 (JSR)<br><br>**AFFIDAVIT OF JAMES FLEISHMAN** |

I, JAMES FLEISHMAN, declare under penalty of perjury as follows:

1.  I have been informed by my counsel that on September 14, 2012, the Court will convene a hearing at which the Court will consider a request by United States Probation to add as a condition to my term of supervised release the authority of the probation officer to require my participation in a treatment program.  In conjunction with that request, to which I consent, I have further been informed that the Court will also address concerns with my presentence probation interview.

2.  If called as a witness at that hearing, I will stand on my Fifth Amendment privilege against compelled testimony.

I state the foregoing is true and correct under penalty of perjury of the laws of the United States.

DATED: July 17, 2012
         Florence, Colorado

JAMES FLEISHMAN

1

# EXHIBIT D

BP-A0544
JUN 10

**U. S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

**WAIVER OF HEARING TO MODIFY COURT ORDER**
**INSTITUTION DRUG ABUSE TREATMENT PROGRAMS**

I have been advised and understand that I am entitled by law to a hearing and   assistance of counsel before any change may be made in my Court Order.  By "assistance of counsel" I understand that I  have the right to be represented at the hearing by counsel.  I also understand that I have the right to request the cou  rt of appoint counsel to represent me at such a hearing at no cost to myself if I am not retain counsel of my own choosing.

I hereby voluntarily waiver my statutory right to hearing and to assistance of  counsel.  I also agree to the following modification of my Court Order:  The words "PARTICIPATE IN DRUG TREATMENT"  be  inserted as a condition of my release status.

| Witness:  Bureau of Prisons Staff | Inmate Signature |
|---|---|
| Date | Date |
| Agreed To:  Chief U.S. Probation Officer | Date |

PDF

Prescribed by P5331

## PROOF OF SERVICE

I, Ethan A. Balogh, certify that on October 22, 2012, I caused the foregoing Memorandum in Support of the Bureau of Prisons's and United States Probation's Request for Modification of the Terms of Supervised Release to be filed electronically with the Clerk of the Court for the United States District Court of the Southern District of New York by using the Court's CM/ECF system and all parties shall be served by that manner.  I further certify that I caused that same Memorandum to be served this same day on Assistant United States Attorneys Antonia Apps and Edward Diskant by electronic mail.

Dated:   October 22, 2012
       San Francisco, California            ETHAN A. BALOGH